R. R. Mayberry, Appellee, v. Charles E. Newell, Appellant.

**MASTER AND SERVANT:** Services—Private Earnings of Servant—
1  Right of Master. Principle recognized that a master is not entitled to the earnings of his servant for work performed by the servant outside his employment hours and for parties other than the master.

**PRINCIPAL AND AGENT:** Liability of Agent—Negligence in Pre-
2  paring Estimates for Contract. An agent is negligent when, in preparing estimates as a basis for bids by his contractor-principal, he fails to indicate correctly the sum total of his detailed estimates; but before the principal (who obtains the contract) may recover of the agent the amount of the error *as a profit lost,* he (the principal) must show that he would have secured the contract *had no such error been made.*

Headnote 1: 26 Cyc. p. 1020. Headnote 2: 2 C. J. p. 734.

*Appeal from Cedar Rapids Superior. Court.*—Atherton B. Clark, Judge.

June 25, 1925.

Rehearing Denied September 25, 1925.

Action in equity, for accounting and recovery of commissions for services. Defendant denied liability, and pleaded a counterclaim, demanding damages on account of negligence in services performed by plaintiff. From judgment in favor of plaintiff and dismissal of counterclaim, defendant appeals.— *Affirmed.*

*Johnson, Donnelly & Lynch,* for appellant.

*George C. Claassen,* for appellee.

ARTHUR, J.—I.  Newell Construction & Machinery Company is a trade name used by Charles E. Newell, engaged in the construction of elevators and mills and furnishing equipment and machinery for them and erecting other buildings.  On December 1, 1917, appellee was employed by appellant to make estimates on which to place bids for the construction of elevators and mills, to draw plans for same, and act as constructing engineer of jobs obtained.  It is undisputed that, when appellee's employment began, he was to receive a salary of $25 per week; and a few weeks later, his salary was raised to $30 per week. Appellee claims that, in April, 1918, his salary was raised to $35 per week, and that, about May 1st, by agreement, his salary was raised to $40 per week, with an agreement for commissions on the basis of profits made on contracts procured by him.

On this last mentioned proposition, there is direct conflict between the parties.  Appellant's claim is that, about May 1st, he agreed to pay appellee a salary of $40 per week, but that he did not agree to pay him commissions, and never at any time agreed to pay appellee any commissions.  There is no question of recovery of salary involved.  Appellee claimed a small balance of $13.69 on salary, but that item was not allowed by the court, and no appeal was taken by Mayberry.  Whether there was an oral agreement under which appellee was to receive commissions based on profits made in construction of certain elevators and installation of machinery and procuring labor, etc., as claimed by appellee, or whether no such oral agreement was entered into, is purely a question of fact, to be determined by the evidence. On this issue, the evidence of the parties is in direct conflict. The court below determined the issue in favor of appellee, and awarded recovery in the amount of $773.27.  The evidence on this issue is quite voluminous, and there is no occasion to incumber the record by setting it forth.  The record furnishes some corroboration for appellee's contention that there was an agreement entered into, providing that commissions should be paid at a certain rate, in addition to a salary of $40 per week.  We think the findings of the court that there was a contract for commissions, and the amount of commissions due appellee under said contract, have sufficient support in the evidence, and we will not disturb the findings.

II.   In the counterclaim appellant alleges that appellee was negligent in making an estimate of the cost of construction of an elevator at Walcott, Iowa, and that such negligence resulted in damage to appellant.   An item of the counterclaim is based upon an error of $1,051.38 in computing the cost of concrete masonry for the foundation of the elevator.   Another charge is that, in making the estimate of the items of equipment for the elevator and the cost of each item, appellee made an error of $170 in adding the several items.   Damages are alleged in the amount of these two errors, and judgment is demanded therefor.

It is also alleged in the counterclaim that appellee, while he was in the employ of appellant, drew plans and specifications for the construction of a building for the Commercial Club in

1. MASTER AND SERVANT: services: private earnings of servant: right of master.

Cedar Rapids, for which he received compensation of $500, and also drew plans for a dwelling house, for which he received $125, and that appellee appropriated said money so received by him to his own use, and did not account to appellant therefor. Appellant alleges that they are entitled to said money so earned by appellee while in their employ, and demands therefor.

First, regarding drawing of plans for parties other than appellant, for which appellee received $625, we think the record shows that the work was largely done during nights and Sundays, and that appellant knew that appellee devoted some time working on said plans in appellant's office, and interposed no objection, and consented to or acquiesced in it.   We think appellee is not entitled to recover on his claim based on said items.

It is undisputed that appellee made the estimate for bidding on the Walcott elevator;   that he made a calculation of the amounts of different materials and labor and the cost thereof

2. PRINCIPAL AND AGENT: liability of agent: negligence in preparing estimates for contract.

to be used in the construction and equipment of the elevator; that the estimate made by him was the basis of the proposal for construction of the plant; and that the contract was obtained on the basis of the estimate made by him.   It appears from the original estimate made by appellee, which is Exhibit C in evidence, that, in making the estimate for the masonry, he figured 6,490 feet at 18 cents per foot at $116.82, instead of $1,168.20, making an error of $1,051.38.   As a witness, appellee admitted

making the figures himself, and that he made a mistake of $1,051.38 in the estimate of masonry. Concerning this item appellee testified:

"I scribbled the decimal point in the wrong place. Exhibit C is the original estimate of the Farmers Elevator job at Walcott, Iowa. It is in my figures. In those figures in my handwriting, the same mistake of $1,051.38 appears as in Exhibit B."

Exhibit B was a typewritten copy of the original estimate made by appellee. Appellee also testified that it was a part of his duty to find and correct mistakes made by him. In making the estimate on this same job, appellee also made an error of $170 in adding items of equipment. The correct total of said items is $851.13. The computation made by appellee and placed as the total is $681.13, disclosing an error of $170. Appellee admits making this mistake. These two errors resulted in a proposal, which was accepted, to construct the Walcott elevator at a price of $1,221.38 less than would have been the amount of the bid for said job on estimates correctly made.

It appears without dispute that the Walcott job was contracted upon the figures prepared by appellee, at $7,730.44, and that the contract was signed by appellee on behalf of appellant. The work was done for that price, and no extra compensation was received to correct the errors in computation. The errors were not discovered until after the contract was made and work begun under it. Appellee admitted in his pleadings and evidence that his employment included the duty to make correct estimates upon which to place bids and enter into building contracts by appellant. In his reply to the counterclaim, appellee admitted that "he held himself out and represented himself as a reasonably skilled architect and construction engineer, and that he was employed by defendant as such, for the purposes set out in said counterclaim."

The mistakes made by appellee in calculating the cost of masonry work and equipment on the Walcott elevator were substantial and serious errors. Appellee had represented himself as competent to make such estimates, and it was part of his duty to make them. Appellant relied upon him and his competency to make said estimates. The proposal for the work was

made on the estimates prepared by appellee. The contract was awarded on the basis of the estimates, and the contract entered into accordingly. Appellee signed the contract in behalf of appellant. We think said mistakes or errors constitute negligence for which appellee would be liable, if appellant sustained damages as a result therefrom, and the damages may be ascertained with reasonable certainty.

This brings us to the more difficult question of whether or not appellant would have secured the contract if said mistakes had not been made. The bid for the work was made and the contract let, on the estimates prepared by appellee, at $7,730.44. If the estimates had been correctly prepared, the proposal for construction of the elevator would have been $7,730.44 plus $1,221.38. Now, if the bid had been $1,221.38 larger than it was, would appellant have secured the contract? If an increase in the bid in the amount of $1,221.38 would have resulted in appellant's failure to secure the contract, then he was not injured by the mistakes complained of. In that event, he would not have reaped benefit of a correct computation. Obviously, if a proposal to construct the elevator based upon correct estimates— that is, estimates free from the two errors which were made— would not have availed to secure the contract, no injury resulted from said mistakes, unless, perhaps, there should be loss sustained under the contract which was made and fulfilled. We conclude from the record that a profit in some amount was realized on the contract made, but the amount does not appear. The record discloses that the contract was let on competitive bidding. The amounts of other bid or bids made, do not appear. The only light the record affords concerning that matter is in the testimony of appellee, brought out on cross-examination. In the course of his examination as to whether he had negotiated with the other party to the contract in regard to the mistakes made in the estimates, he said:

"No, they laughed at me, as it was, and said I was a thousand dollars under anybody else."

If the bid made by appellant were $1,000 less than his nearest competitor, and only that much lower, then a bid made on correct estimate would have been $221.38 larger than his closest competitor, and in that event the fair inference is that he

would not have obtained the contract.

While we think appellee guilty of actionable negligence, we conclude that appellant has failed to establish that he has sustained damages as a result of said negligence. We concur in the judgment of the court below, and the case is affirmed.— *Affirmed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.